UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLICKBOOTH.COM, LLC, a
Florida limited liability company,

    Plaintiff,

vs.                                                  Case No.:

ZOOBUH, INC., a Utah
corporation,

    Defendant.
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, Clickbooth.com, LLC ("Clickbooth") files its Complaint and Demand for Jury Trial against Defendant, ZooBuh, Inc. ("ZooBuh") and states as follows:

### PARTIES, JURISDICTION AND VENUE

1. This is an action for a declaratory judgment and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. Clickbooth is a Florida limited liability company with its principal place of business in Sarasota, Florida.

3. ZooBuh is a Utah corporation with its principal place of business in Cedar Hills, Utah.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over ZooBuh because ZooBuh does substantial, continuous and systematic business in Florida. ZooBuh should have known it would be subject to jurisdiction in Florida when it solicited or maintained the accounts of its customers

in Florida. In addition, ZooBuh has purposefully directed its activities at residents of the State of Florida, including by sending a demand letter to Clickbooth.

6. Venue is proper in the Tampa Division of the Middle District of Florida because the causes of action alleged herein occurred within the geographic boundaries of the Tampa Division of this Court.

7. All conditions precedent to the bringing and maintenance of this lawsuit have been performed, have occurred, or have been waived.

## CLICKBOOTH'S BUSINESS

8. Clickbooth is a web-based affiliate marketing company that works with its customers to create successful marketing and advertising campaigns to specific target demographics.

9. Clickbooth maintains a network of thousands of independent affiliates or, third-party publishers. These affiliates are typically small entrepreneurs who purchase advertising space on various websites or who engage in direct mailing techniques. Clickbooth acts as a middleman between its network of affiliates, who purchase and provide advertising on the internet, and its customers, which are businesses that want to advertise online.

10. A Clickbooth affiliate may distribute a customer's advertisements to its audience via electronic mail. However, Clickbooth does not send commercial emails to consumers.

11. Knowing that its affiliates send commercial emails in an effort to market Clickbooth's customers' products, Clickbooth maintains substantial measures to ensure compliance with the CAN-SPAM Act, 15 U.S.C. § 7701 *et seq.* (the "Act").

12. Clickbooth requires its affiliates to agree to its Publisher Terms and Conditions and Compliance Policies, which include Email Guidelines. A true, complete and authentic copy of Clickbooth's Terms and Conditions and Email Guidelines is attached as **Exhibit A**.

13. An affiliate that will not agree to Clickbooth's Email Guidelines will not be permitted to publish on Clickbooth's network.

14. In the past, Clickbooth has terminated affiliates for non-compliance with its Email Guidelines.

15. Clickbooth also maintains a suppression list. The purpose of the suppression list is to alert publishers of email addresses whose owners have opted out or unsubscribed their email addresses from future messages.

16. Clickbooth's publishers must download the most recent version of the suppression list and scrub it against its own mailing list before each email deployment. This ensures that consumers on the suppression list will not receive emails they do not want, even if they were previously on a publisher's mailing list.

17. Clickbooth contracts with a third party, Optizmo Technologies, to manage its suppression list and further ensure compliance with the Act.

18. Finally, Clickbooth employs an in-house compliance department to ensure its affiliates' continued compliance with the Act.

## ZOOBUH'S BUSINESS

19. ZooBuh incorporated in January 2007. According to a sworn declaration by ZooBuh's owner and CEO, Alan Fullmer ("Fullmer"), ZooBuh offers email services, blog hosting and chat services and has customers in all 50 states. As of January 18, 2012, ZooBuh serviced approximately 35,000 customer accounts.

20. According to the official web site of the City of Cedar Hills, Utah, ZooBuh is a "Home-Based Business." Utah County business records reveal that Fullmer runs ZooBuh out of a personal residence. The same address is used for another business, Xnote.com, LLC. The registered agent for each company, Franklin Fullmer, shares the same address.

21. ZooBuh "has maintained a fairly static customer base for the last two years" and has suffered a "lack of organic business growth since 2009."

22. Even though ZooBuh's business has not grown since 2009, it allegedly engages in a constant battle with SPAM. As of January 18, 2012, about 70% of the email messages that ZooBuh receives on its system are SPAM.

## ZOOBUH'S RELATED LITIGATION AND DEMANDS

23. On May 13, 2011, ZooBuh sued Smoke Freely, LLC, Stacked, LLC, Killian Capital Partners, LLC, Then There Were Two, LLC and Ted Davenport in Case Number 2:11cv00439 in the United States District Court for the District of Utah, Northern Division. ZooBuh alleged that, between January 2011 and June 2011 (as of the Second Amended Complaint), the defendants sent at least 17,398 email messages to ZooBuh that violated the Act. ZooBuh further alleged that it, as a result of the receipt of SPAM emails, including the emails in question, "has had to create custom SPAM filtering software, has had to dedicate additional man hours to dealing with SPAM related issues, has received customer complaints, has lost customers, and has experienced server spikes, slowdowns, and crashes inhibiting ZooBuh's ability to fulfill its contractual obligations with its customers."

24. On June 7, 2011, ZooBuh sued Better Broadcasting, LLC, Iono Interactive and Envoy Media, Inc. in Case Number 2:11-cv-00516-DB in the United States District Court for the District of Utah, Central Division. ZooBuh alleged that, between January and November 2011

(as of the First Amended Complaint), the defendants sent at least 12,883 email messages to ZooBuh, many of which violated the Act. ZooBuh further alleged that it, as a result of the receipt of SPAM emails, including the emails in question, "has had to create and maintain custom SPAM filtering software, has had to dedicate additional man hours to dealing with SPAM related issues, has had to purchase additional servers and other hardware, has received customer complaints, has lost customers, and has experienced server spikes, slowdowns, and crashes inhibiting ZooBuh's ability to fulfill its contractual obligations with its customers."

25. On December 28, 2011, ZooBuh sued Smokeless Cigarette, LLC, Cigirex, LLC and AKMG, Inc in Case Number 2:11-cv-01213-DN in the United States District Court for the District of Utah, Central Division. ZooBuh alleged that, between January 2011 and April 2012 (as of the First Amended Complaint), the defendants sent at least 21,597 email messages to ZooBuh that violated the Act. ZooBuh further alleged that it, as a result of the receipt of SPAM emails, including the emails in question, "has had to create and maintain custom SPAM filtering software, has had to dedicate additional man hours to dealing with SPAM related issues, has had to purchase additional servers and other hardware, has received customer complaints, has lost customers, and has experienced server spikes, slowdowns, and crashes inhibiting ZooBuh's ability to fulfill its contractual obligations with its customers."

26. On February 27, 2012, Adknowledge, Inc. sued ZooBuh and Fullmer in Case Number 2:2012-cv-01656 in the United States District Court for the Central District of California, Western Division. Among other claims, Adknowledge sought a declaratory judgment that it did not violate the Act after it received demand letters and litigation threats from ZooBuh. In its January 18, 2012 demand letter to Adknowledge, ZooBuh alleged that, over a several month period in 2011, Adknowledge sent over 100,000 emails, many of which violated the Act.

27. On April 25, 2012, Clickbooth received a demand letter from ZooBuh's attorneys. The letter alleged that "Clickbooth sent or caused to be sent approximately 22,489 emails to ZooBuh's mail servers" over "a several month period in 2011." During this time period, ZooBuh's email servers were allegedly "the victim of a significant spam attack which resulted in various server crashes, bandwidth spikes, and a kernel crash, resulting in permanent loss of information and hardware."

28. Before April 25, 2012, ZooBuh never contacted Clickbooth about alleged SPAM. Rather than complaining immediately about unwanted emails, ZooBuh collected the emails, "conducted a forensic review," and calculated damages before demanding a "settlement" from Clickbooth.

29. ZooBuh's litigation threats against Clickbooth are consistent with its recent campaign to "use the CAN-SPAM Act to build a litigation factory for…personal financial benefit." *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1067 (9th Cir. 2009) (Gould, J. concurring).

30. According to ZooBuh's demand letter, it has investigated, analyzed and categorized over 22,000 emails allegedly sent by Clickbooth. Combined with the emails it alleges were sent by the other parties it recently sued or sent demand letters, ZooBuh has analyzed and categorized approximately 175,000 emails in the last year which allegedly violate the Act and for which it has sought damages.

31. Clickbooth is not requesting the Court to provide legal advice or answer questions propounded out of curiosity, but is seeking a declaration of its rights pursuant to 28 U.S.C. §§ 2201 and 2202.

## COUNT I: DECLARATORY JUDGMENT AS TO ZOOBUH'S STANDING TO BRING SUIT UNDER THE ACT

32. Clickbooth realleges paragraphs 1 through 31.

33. There is an actual and justiciable controversy between Clickbooth and ZooBuh as to whether ZooBuh (a) qualifies as an Internet Access Service provider ("IAS") under the Act and, if so, (b) whether ZooBuh was adversely affected by a violation of the Act attributable to Clickbooth.

34. ZooBuh lacks standing under the Act because it is not an IAS.

35. ZooBuh lacks standing under the Act because it has not been adversely affected by a violation of the Act attributable to Clickbooth.

WHEREFORE, Plaintiff, Clickbooth.com, LLC, respectfully requests this Court to adjudge and declare that Defendant, ZooBuh, Inc., does not have standing to enforce the CAN-SPAM Act because it is not an Internet Access Service provider, award Clickbooth its costs and attorneys' fees pursuant to 15 U.S.C. § 7706, and for such further relief as the Court deems just and proper.

## COUNT II: DECLARATORY JUDGMENT AS TO CLICKBOOTH'S STATUS AS A SENDER UNDER THE ACT

36. Clickbooth realleges paragraphs 1 through 31.

37. There is an actual and justiciable controversy between Clickbooth and ZooBuh as to whether Clickbooth qualifies as a Sender under the Act of any of the emails about which ZooBuh complains.

38. Clickbooth does not advertise or promote its product, service or Internet website in any of the emails about which ZooBuh complains.

WHEREFORE, Plaintiff, Clickbooth.com, LLC, respectfully requests this Court to adjudge and declare that it does not qualify as a Sender under the CAN-SPAM Act, award Clickbooth its costs and attorneys' fees pursuant to 15 U.S.C. § 7706, and for such further relief as the Court deems just and proper.

### COUNT III: DECLARATORY JUDGMENT AS TO WHETHER CLICKBOOTH INITIATED OR PROCURED EMAILS

39. Clickbooth realleges paragraphs 1 through 31.

40. In the event that any of the emails about which ZooBuh complains violate the Act and were sent by publisher affiliates of Clickbooth, Clickbooth did not have actual knowledge that such publisher was violating the Act or engaging in a pattern or practice that violates the Act.

41. In the event that any of the emails about which ZooBuh complains violate the Act and were sent by publisher affiliates of Clickbooth, Clickbooth did not consciously avoid knowing that such publisher was violating the Act or engaging in a pattern or practice that violates the Act.

42. Even if ZooBuh has standing under the Act, Clickbooth did not initiate or procure any of the emails about which it complains.

WHEREFORE, Plaintiff, Clickbooth.com, LLC, respectfully requests this Court to adjudge and declare that it did not initiate or procure the emails about which Defendant, ZooBuh, Inc. complains, award Clickbooth its costs and attorneys' fees pursuant to 15 U.S.C. § 7706, and for such further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff, Clickbooth.com, LLC, demands a trial by jury on all issues so triable.

Dated this 8th day of May, 2012

/s/ Kenneth G. Turkel
Kenneth G. Turkel
Florida Bar No. 867233
Brad F. Barrios
Florida Bar No. 0035293
BAJO CUVA COHEN & TURKEL, P.A.
100 North Tampa Street, Suite 1900
Tampa, FL 33602
Phone: (813) 443-2199
Fax: (813) 443-2193
*Attorneys for Plaintiff*